**In re Barbara Jean ELLIS a/k/a Barbara Jean Thurber, Debtor.**

**Rosemary MABEY, Plaintiff,**

**v.**

**Barbara Jean ELLIS, a/k/a Barbara Jean Thurber, Defendant.**

**In re Harold Lee THURBER, Debtor.**

**Rosemary MABEY, Plaintiff,**

**v.**

**Harold Lee THURBER, Defendant.**

**In re Ronald JACK and Charlene Jack, Debtors.**

**Rosemary MABEY, Plaintiff,**

**v.**

**Ronald JACK and Charlene Jack, Defendants.**

**Bankruptcy Nos. 97–02827, 97–02758 and 97–02862.**
**Adversary Nos. 97–6387, 97–6388 and 98–6034.**

United States Bankruptcy Court, D. Idaho.

Sept. 23, 1998.

---

788

Mark Ingram, Burley, ID, for plaintiff.

David W. Haley, Burley, ID, for defendants.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Chief Judge.

**Background.**

These adversary proceedings raise interesting issues involving the interplay between state and Federal bankruptcy law. By stipulation of the parties, the actions were consolidated for trial on August 28, 1998. In each, Plaintiff Rosemary Mabey seeks to except from discharge her claims against the respective Defendants Barbara Jean Ellis, Harold Lee Thurber, and Ronald and Charlene Jack arising from a restitution judgment entered in state court juvenile proceedings. Following trial, the issues were taken under advisement. This Memorandum constitutes the Court's findings of fact and conclusions of law. F.R.B.P. 7052.

**Facts.**

The parties have stipulated to the material facts. On August 26, 1996, two juveniles, Robert Thurber, son of Defendants Barbara Ellis and Harold Thurber, and Michael Jack, son of Defendants Ronald and Charlene Jack, burglarized Plaintiff's residence. The juveniles were charged and later admitted the burglary. On December 11, 1996, the state court entered a restitution judgment against the boys and their parents as joint obligors, and in favor of Plaintiff, for $32,012.06, the amount of damages suffered by Plaintiff as a result of the minors' activities. The Defendants have each filed for relief under Chapter 7 of the Bankruptcy Code, and seek to discharge their liability to Plaintiff under the restitution judgment.

**Discussion.**

Idaho Code § 20–520(3) provides that in a state court juvenile proceeding the magistrate judge shall, in most cases, as part of the offender's sentence, enter a restitution order against not only the minor, but also against his or her parents, to compensate a victim for any financial losses. This is the provision under which the magistrate judge entered judgment against the Defendants in favor of the Plaintiff.

Bankruptcy Code Section 523(a)(7) creates an exception to discharge "to the extent [a] debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . . ." 11 U.S.C. § 523(a)(7). Plaintiff asserts that her claims against Defendants arising from the restitution order are excepted from discharge under Section 523(a)(7). Defendants, on the other hand, contend that since the principal aim of the restitution order entered by the state court was to ensure that Plaintiff was made whole for her financial loss, that the claims should be discharged in Defendants' bankruptcy cases.

In 1986, in *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216, the Supreme Court held that a restitution obligation imposed against a debtor as a condition of probation in a state criminal proceeding was nondischargeable in a subsequent bankruptcy case under Section 523(a)(7). The Court reasoned that:

> Because criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate "for the benefit of" the State. Similarly, they are not assessed "for . . . compensation" of the victim.

The sentence following a criminal conviction necessarily considers the penal and rehabilitative interests of the State. Those interests are sufficient to place restitution orders within the meaning of [Section] 523(a)(7).

*Kelly v. Robinson,* 479 U.S. 36, 53, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

Of course, in *Kelly* the debtor was the offender in the state court criminal action. While that is not the case here, the Court's analysis should serve as guidance in applying Section 523(a)(7) to the present facts. However, in 1994, several years after *Kelly,* Congress amended Section 523(a) to add a new exception to discharge. Section 523(a)(13) excepts from discharge debts "for any payment of an order of restitution issued under title 18, United States Code." Title 18 is, in essence, the Federal Criminal Code. Section 523(a)(13) does not mention *state court* restitution orders. Do the interpretive guidelines for Section 523(a)(7) announced in *Kelly* continue as good law in light of the 1994 amendments?

An analysis of the scope of Section 523(a)(7) in light of the adoption of Section 523(a)(13) can take different paths. One approach is premised upon the legal maxim *"inclusio unius est exclusio alterius,"* or in other words, the inclusion of one is the exclusion of the other. As explained by the Supreme Court, "[i]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another...." *BFP v. Resolution Trust Corporation,* 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (quoting *Chicago v. Environmental Defense Fund,* 511 U.S. 328, 338, 114 S.Ct. 1588, 128 L.Ed.2d 302 (1994)). Under this view of interpreting the statutes, because Congress expressly excepted federal criminal restitution orders from discharge in the 1994 amendments, it should be assumed that Congress intended state restitution orders be subject to discharge.

■ A second possible approach instructs the Court to interpret a new statute in light of existing case law. "Absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 979 F.2d 721, 725 (9th Cir.1992) (citing *Johnson v. First Nat. Bank of Montevideo, Minn.,* 719 F.2d 270, 277 (8th Cir. 1983), cert. denied, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984)). In 1994, when Section 523 was amended to add (a)(13), the Supreme Court in *Kelly* had already interpreted (a)(7) to include state restitution orders. Taking this approach, in light of the fact that no changes were made to (a)(7) by Congress in 1994 when (a)(13) was added, it should be concluded that Congress was content with the interpretation of (a)(7) provided by *Kelly* and chose not to disturb the holding.

These are difficult questions of interpretation. However, after consideration, this Court finds persuasive the decision of the district court in *State of Illinois v. Towers (In re Towers),* 217 B.R. 1008, 1013 (N.D.Ill. 1998), when it was faced with this issue. In *Towers,* the court held that "to the extent that criminal and civil restitution obligations were considered nondischargeable as 'fines, penalties, and forfeitures' under [Section] 523(a)(7), that result should continue despite the addition of [Section] 523(a)(13)." *Towers,* at 1012. The court explained that while (a)(13) covered only restitution obligations arising under federal law, the silence within (a)(13) as to state restitution obligations merely showed the satisfaction of Congress with the previous interpretation given (a)(7) by *Kelly.* The court declined to apply the doctrine of *inclusio unius est exclusio alterius.*

■ This Court is impressed by the clear policy announced by the Supreme Court in *Kelly.* In light of this, if Congress desired to later change the *Kelly* rule, Congress should have done so expressly, not by implication. Because it did not, this Court holds that Section 523(a)(7) continues to except state court restitution awards from discharge in bankruptcy for the reasons announced in *Kelly,* and the Supreme Court's analysis of the issues in that action is applicable here.

While the policy announced in *Kelly* continues as good law, the Court must determine whether the facts of this case fit within the holding in *Kelly*. In *Kelly*, the Supreme Court was influenced by the benefits running in favor of the state, not just the victim, in imposing a restitution judgment against a debtor-offender. Obviously, the State of Idaho has a strong interest in rehabilitating an offender by requiring restitution to the victim. *See State v. Hamilton*, 129 Idaho 938, 935 P.2d 201, 205 (App.1997). However, unlike in *Kelly*, here the debtors in bankruptcy are not the criminal offenders, but instead the parents of those offenders. Under these facts, does the restitution order satisfy the requirements of Section 523(a)(7)?

■ First, the Court must determine whether the restitution order is a "fine, penalty or forfeiture." These terms are not defined within the Bankruptcy Code. "As a result, the courts, in addressing the issue ... review the statutory scheme creating or imposing the liability, and the function or nature of the liability in question." *Idaho State Insurance Fund v. Hoseley (In re Hoseley)*, 96.1 I.B.C.R. 37, 38 (citations omitted). Fines, penalties and forfeitures serve to deter the misconduct. *In re Williams*, 93 I.B.C.R. 97, 98. The state statute under which the restitution award was made provides:

> [u]nless the court determines that an order of restitution would be inappropriate or undesirable, it shall order the juvenile or his parents or both to pay restitution to or make whole any victim who suffers an economic loss as a result of the juvenile's conduct in accordance with the standards and requirements of sections 19–5304 and 19–5305, Idaho Code. The amount of restitution which may be ordered by the court shall not be subject to the limitations of section 6–210, Idaho Code.

Idaho Code § 20–520(3). The statute is part of the Juvenile Corrections Act, Idaho Code, Title 20, Chapter 5. It is a subdivision of the provision on "Sentencing," and part of a system intended by the Idaho Legislature, where an offense has been committed, to "promote accountability, competency development and community protection." Idaho Code § 20–520(1). The Act contains a detailed statement of the Legislature's intent in adopting the statutes. Idaho Code § 20–501.

Idaho Code § 20–520(3) does not mention the term "fine" or "penalty," but does speak in terms of making the victim "whole" with respect to such victim's "economic loss." More generally, "[i]t is the ... intent of the legislature that the parents or legal guardians of the juvenile offender be held accountable, where appropriate, through ... restitution to victims of the juvenile's delinquent acts." Idaho Code § 20–501. Because a restitution award is imposed solely as a result of misbehavior on the part of the juvenile, and is to be a part of the state court's sentence in every case, except "where inappropriate or undesirable," application of the statute against a parent seems more a device to provide the victim with an opportunity to recover any economic loss, than a means to punish or rehabilitate the parent.

The availability of a restitution award is especially important in cases such as this, where Plaintiff's damages exceed the limits under Idaho law for recovery from the parents in a civil action. *See* Idaho Code § 6–210 (limits recovery against parents for economic damages wilfully caused by a minor to $2,500); and Idaho Code § 20–520(3) (restitution award not subject to civil limit). It would therefore seem the liability of the parents imposed under Idaho Code § 20–520(3), as it is applied in this case, does not constitute a fine, penalty, or forfeiture as those terms are used in Section 523(a)(7).

■ Next, even assuming the obligation was in the nature of a fine or penalty, the Bankruptcy Code requires that criminal restitution debts be "payable to ... a governmental unit" to be excepted from discharge. 11 U.S.C. § 523(a)(7). The Ninth Circuit has recognized that private creditors can not take advantage of the protections of Section 523(a)(7). *Palmer v. Levy (In re Levy)*, 951 F.2d 196, 199 (9th Cir.1991), cert. denied 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992).[1] A governmental unit as defined in Section 101(27) means:

---

1. *Levy* was abrogated by *Cohen v. de la Cruz,* —— U.S. ——, 118 S.Ct. 1212, 140 L.Ed.2d 341

United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

11 U.S.C. § 101(27). Plaintiff is not, nor does she claim to be, a governmental unit for purposes of this action.

The state court did not require the restitution payments to be paid to a governmental unit. The Order of Restitution provides:

NOW, THEREFORE, IT IS HEREBY ORDERED, pursuant to Idaho Code, Section 19-5304(2), that Rosemary Mabey have and recover judgment against the defendant in the sum of $32,012.06 plus interest at the rate of 10.875% per annum, and that this sum is due and payable during the period of probation. IT IS FURTHER ORDERED that after forty two (42) days from the entry of this Order of Restitution, or at the conclusion of a hearing to reconsider an order of restitution, whichever occurs later, this Order of Restitution may be recorded as a judgment, and the victim herein may execute as provided by law for civil judgments.

Plaintiff's Exhibit 3: Order of Restitution. As authorized by the statute, Plaintiff was in effect granted a money judgment against Defendants which she could collect in the same fashion as a judgment entered in a civil action. In fact, Plaintiff did so by garnishment of Defendants' wages. Plaintiff's claims against Defendants were therefore not "payable to a governmental unit."

 Not only must an obligation be payable to a governmental unit, it must also be "for the benefit of" that unit. 11 U.S.C. § 523(a)(7). The benefit to the governmental

unit with respect to an order of restitution is "the State's interest in rehabilitation and punishment, rather than the victim's desire for compensation ...." *Kelly v. Robinson,* 479 U.S. 36, 52, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). These interests are directed at the offender, the purpose of which is to strengthen the offender's sense of responsibility. *United States v.. Carson,* 669 F.2d 216, 217 (5th Cir.1982). In this case, the question is whether the State of Idaho benefits from imposing a restitution obligation against someone other than the offender.

The statute provides no instruction as to the circumstances under which a restitution order would be "inappropriate or undesirable".[2] It does grant discretion to the state court judge to decide whether to impose liability upon the juvenile offenders, the parents, both, or at all. In this case, the state court magistrate judge decided to enter a restitution judgment against the juveniles and their parents. The magistrate's reasons for subjecting the juveniles' parents to liability are not clearly explained in the record. In a deposition taken in this matter, when asked about the parents' involvement in the commission of the crimes, the judge stated:

[t]hat there was no indication that the parents personally did the damage. That it was their children that did the damage, did the physical damage, itself. [However,] I have some difficulty saying that there was no indication that they were not involved, because they had control over the juveniles.

Deposition of the Honorable Larry R. Duff at p. 7, lines 17–23.

This Court is extremely reluctant to speculate about the magistrate judge's findings in this case, especially when the Defendants' right to a bankruptcy discharge is at stake. The judge's statements quoted above may show his concern that the offenders' parents, although not personally involved in the crimi-

(1998). However, *Cohen* involved issues concerning the dischargeability of punitive damages under Section 523(a)(2). In *Levy,* the Ninth Circuit had analyzed the discharge of private punitive damages under both (a)(7) and (a)(2). In this Court's view, *Levy's* instructions applicable to (a)(7) were not impacted by *Cohen.*

2. Section 20–520(3) directs restitution be awarded "in accordance with the standards and requirements of section[ ] 19–5304 ..., Idaho Code." That statute directs the sentencing judge to consider the victim's loss; the offender's financial resources, needs and earning ability; and "other factors as the court deems appropriate". Idaho Code § 19–5304(7).

nal conduct, should nonetheless be held liable for damages caused by their minor children, because the parents for some reason did not properly exercise control over their children. If this were a finding based upon facts developed in the juvenile proceedings, the judge's exercise of discretion should be given great weight by this Court in deciding whether imposition of the restitution award furthers an interest of the State. On the other hand, if the magistrate judge's statement is simply his conclusion that parents should in all cases and regardless of the facts be liable for the damages caused by their children's criminal conduct, no exercise of discretion is involved, and no State interest is at stake.

In this case, the record is simply inadequate for this Court to conclude whether in imposing a restitution judgment against the Defendants, the state judge acted with the State's interests in mind as described in *Kelly*. The record from the state court shows no facts upon which the judge could have concluded that Defendants were careless or negligent in supervising the conduct of their children. By contrast, the parties have stipulated that one of the Defendants, Mr. Thurber, was living out-of-state and did not have custody, or presumably control, over his son at the time the child committed the crime. Neither does the state judge's deposition reflect the particular facts of this case justifying imposition of an award against the parents. Lacking such facts, this Court can not conclude that Plaintiff's restitution claim "benefitted" the State to except the debt from discharge under Section 523(a)(7).

■ Finally, this Court must find that Plaintiff's claim against Defendants is not compensation for actual pecuniary loss. This is difficult on the face of the record since the state judge gave Plaintiff judgment against Defendants for the same amount of the damages done by the children. This Court understands that the restitution order need not be considered compensation for actual pecuniary loss simply because it matches the victim's loss. Instead, under the statute, the magistrate judge should exercise discretion in determining the amount of that obligation. *State v. Hamilton*, 129 Idaho 938, 935 P.2d 201, 205 (App.1997). Although the amount of

the economic loss sustained by the victim is one factor, other factors are also considered in this determination. *Id.; see also* Idaho Code § 19–5304(7).

■ Again, however, the record contains no indication of the factors considered by the state court in fixing the amount of the restitution judgment other than the amount of Plaintiff's financial loss. To the extent the liability imposed "constitutes compensation for actual pecuniary loss ... that amount is dischargeable." *Idaho State Insurance Fund v. Hoseley (In re Hoseley)*, 96.1 I.B.C.R. 37, 39. Absent a discussion by the state court, or other evidence in the record, this Court can not conclude that the amount of the restitution judgment was fixed with regard to other factors.

**Conclusion.**

■ The Court does not hereby declare that all restitution awards made against the parents of juvenile offenders under the Idaho law may be discharged in bankruptcy. The Court acknowledges that the restitution provisions of Idaho Code § 20–520(3) may, under appropriate facts, advance the interests of the State, as well as those of the victim. However, the statute is also expressly designed to make a victim whole for any economic loss suffered. Different factors, important to this Court's dischargeability analysis, may come into play in a state court judge's decision whether to impose a restitution obligation against the parents, and the amount of that obligation. It is Plaintiff's burden to show by a preponderance of the evidence that the restitution order satisfies the requirements of Section 523(a)(7). *See Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (preponderance of the evidence standard applies to all dischargeability exceptions under Section 523(a)).

In this case, Plaintiff has failed to carry this burden and has not shown that the restitution awarded against Defendants was intended to benefit the State, or whether it was intended solely to compensate Plaintiff for her pecuniary loss. While it is the State's policy to allow Plaintiff the option of collecting her damages from the juvenile offenders'

parents, Federal bankruptcy policy dictates that such obligation be subject to discharge.

Plaintiff must prove her claims against Defendants are: (1) not in the nature of a fine, penalty or forfeiture; (2) not payable to and for the benefit of a governmental unit; and (3) not compensation for actual pecuniary loss. Because she failed to do so, Defendants' obligations are not excepted from their bankruptcy discharge under Section 523(a)(7). Counsel for Defendants shall submit an appropriate judgment for entry by the Court.